**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In re: NICKELS MIDWAY PIER, L.L.C., | : : : | Civil Action No. 09-cv-6290 (NLH) |
| Debtor. | : : : | **OPINION** |

**APPEARANCES:**

Michael A. Zindler, Esquire
Teich Groh, P.C.
691 State Highway 33
Trenton, NJ 08619
*Attorney for Debtor Nickels Midway Pier, L.L.C.*

Jerrold N. Poslusny, Jr., Esquire
Cozen O'Connor, P.C.
Liberty View, Suite 300
457 Haddonfield Road
P.O. Box 5459
Cherry Hill, NJ 08002
*Attorney for Objector Wild Waves, L.L.C.*

**HILLMAN, District Judge**

Debtor, Nickels Midway Pier, L.L.C. ("Nickels"), and Wild Waves, L.L.C. have been entangled in litigation against one another since 2001. In 2003, Nickels initiated Chapter 11 bankruptcy proceedings in the Bankruptcy Court for this District. After years of litigation before the Bankruptcy Court, entailing numerous motions, hearings, and appeals, Nickels now has filed its Motion to Withdraw the Chapter 11 Proceeding from the Bankruptcy Court to the District Court. Wild Waves challenges Nickels's motion.

For the reasons expressed below, Nickels's motion to

withdraw the reference is denied.

## I.   JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1334, which grants district courts "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b).  Pursuant to 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  "Accordingly, the District Court of New Jersey has referred all proceedings arising under Title 11 to the bankruptcy court pursuant to a standing order of reference dated July 23, 1984."  Mass. Mut. Life Ins. Co. v. Marinari, 2008 U.S. Dist. LEXIS 37550, at *5 (D.N.J. May 6, 2008) (citation and internal quotation marks omitted).  However, even when a case is referred to a bankruptcy court, the district court has the authority to withdraw the case or proceeding referred.  28 U.S.C. § 157(d).

## II.   BACKGROUND

Nickels owns boardwalk property in Wildwood, New Jersey, including an amusement pier that it operates.  In 1999, Nickels and Wild Waves entered into a lease agreement whereby Wild Waves

2

would lease a substantial portion of the pier, on which it would construct and operate a water park.  Wild Waves maintains that, as part of their deal, Nickels agreed to sell the pier to Wild Waves.  Nickels disputes that assertion.  In 2001, Nickels filed a suit against Wild Waves in the Superior Court of New Jersey, seeking rent due under the lease.  Wild Waves counterclaimed, arguing that Nickels was obligated to sell the pier pursuant to the parties' oral agreement.

During the pendency of the state court litigation, fire ravaged Nickels's pier on two separate occasions, including the portion leased by Wild Waves.[1]  As a result, Nickels brought claims in this District against several parties, including Wild Waves.  For the first fire, Wild Waves was found to be responsible for 30% of the damage, leading to a judgment in Nickels's favor of $389,182.50.  See Scottsdale Ins. Co. v. Weiner, No. 03-cv-3857 (D.N.J. June 17, 2009).  Wild Waves was exonerated of any liability with regard to the second fire.  See id.

On December 8, 2003, just days after the trial commenced in state court, Nickels initiated Chapter 11 bankruptcy proceedings in the Bankruptcy Court.  The Bankruptcy Court, however, stayed its consideration of the lease until after the state court had

---

[1]     The dates of the fires were January 16, 2002 and July 16, 2002, respectively.

reached its decision.  In the meantime, the Bankruptcy Court
decided that until the lease and sale issues were resolved, Wild
Waves would make court-determined use and occupancy payments to
Nickels in lieu of the usual rent.

In April 2005, the state court held that the parties had
entered into an integrated agreement in which Nickels agreed to
lease and, ultimately, sell the pier to Wild Waves.  Upon
resolution of the state court litigation, Nickels, in July 2005,
sought to proceed with its motion before the Bankruptcy Court to
reject the agreement.  Ultimately, the matter was appealed to the
District Court, which reversed the Bankruptcy Court and concluded
that, for purposes of bankruptcy law, the parties' lease and sale
agreements constituted two divisible, independent agreements.
See Nickels Midway Pier, L.L.C. v. Wild Waves, L.L.C., 341 B.R.
486 (D.N.J. 2006).  The District Court remanded the matter to the
Bankruptcy Court for determinations as to whether, under the
circumstances, Nickels could reject the lease or sale agreement
and what the possible legal consequences would be.  See id.  The
Third Circuit Court of Appeals affirmed the District Court's
decision.  See In re Nickels Midway Pier, L.L.C., 255 Fed. Appx.
633 (3d Cir. 2007).  On remand, the Bankruptcy Court determined
that the agreements were executory and were not terminated pre-
petition.  See In re Nickels Midway Pier, 2006 Bankr. LEXIS 4123
(Bankr. D.N.J. Sept. 15, 2006).  The District Court affirmed in

part and vacated in part the Bankruptcy Court's decision,
ordering that the Bankruptcy Court address whether either party
breached the lease.  See In re Nickels Midway Pier, 372 B.R. 218
(D.N.J. 2007).

Further, in May 2006, Nickels filed a motion before the
Bankruptcy Court seeking to compel Wild Waves to pay the full
amount of rent and real estate taxes as well as a $400,000
deposit into escrow.  After several hearings, the Bankruptcy
Court, in March 2007, held that Wild Waves was entitled to a rent
abatement on account of the loss of income resulting from the
pier's fire, but that Wild Waves was required to deposit $400,000
in escrow.  Both issues were appealed to the District Court and,
subsequently, the Third Circuit.  Both courts affirmed the
Bankruptcy Court's decision, respectively.  See In re Nickels
Midway Pier, 383 B.R. 595 (D.N.J. 2008), aff'd 2009 U.S. App.
LEXIS 22766 (3d Cir. Oct. 15, 2009).

In June and September of 2007, the Bankruptcy Court
conducted a trial to consider Wild Waves's proof of claim against
Nickels and Nickels's contention that the lease had been
terminated prior to its Chapter 11 petition.  On September 30,
2009, the Bankruptcy Court determined that Wild Waves possessed a
claim against Nickels and that the lease and sale agreements
remain executory.  In November 2009, Wild Waves moved for further
findings relating to its action against Nickels, and a hearing

was scheduled before the Bankruptcy Court.

Meanwhile, Nickels again moved to eliminate the reduction in rent and to compel Wild Waves to pay all past rent allegedly due. The Bankruptcy Court affirmed its previous decision and did not order any change in the rent owed by Wild Waves. Nickels has appealed that decision to this Court.

Finally, at a status conference on November 9, 2009, the Bankruptcy Court ordered that Nickels submit a plan of reorganization and a disclosure statement by January 8, 2010. Wild Waves submitted its own plan and disclosure statement on November 24, 2009.

On December 11, 2009, Nickels filed its Motion to Withdraw the Chapter 11 Proceeding from the Bankruptcy Court to the District Court. Presently before the Court is Nickels's motion.

## III. DISCUSSION

Nickels argues that this Court should withdraw the case from the Bankruptcy Court for reasons of judicial economy and an expeditious bankruptcy process. In particular, Nickels states that the parties are incurring substantial, duplicative expenses whenever an issue is litigated in the Bankruptcy Court and then appealed to the District Court. Nickels foresees several more matters already resolved by or currently pending before the Bankruptcy Court that will likely be subject to the District Court's appellate review, including rent abatement, allegations

of and damages for breach of their agreement, and plans of
reorganization and disclosure statements.  The costliness of the
bankruptcy litigation is compounded, says Nickels, by the
economic hardship it suffers as a result of Wild Waves's reduced
rent and property tax payments and the unpaid fees incurred by
Nickels's counsel.  Thus, Nickels encourages this Court to
withdraw the reference and adjudicate the case itself so as to
avoid any greater expenditures in cost and time.  Moreover,
Nickels submits that the majority of outstanding issues pending
in this case are non-core proceedings and, thus, are appropriate
for withdrawal and direct consideration by this Court.

    Wild Waves counters that, after approximately six years of
litigation and more than seventy motions and seventy hearings,
the Bankruptcy Court is intimately familiar with this case and
should be afforded the opportunity to resolve it in the interests
of administrative uniformity, bankruptcy expertise, and the
efficient use of resources.  Also illustrated by the litigation's
protraction, submits Wild Waves, is the untimeliness of Nickels's
motion to withdraw, which is, according to Wild Waves, a
desperate attempt at forum shopping to find a more favorable
court.  Finally, Wild Waves contends that all of the remaining
issues in this case constitute core proceedings appropriately
before the Bankruptcy Court.

    28 U.S.C. § 157(d) provides:  "The district court may

withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown."[2]  Among the factors relevant to the district court's determination whether to withdraw the reference to the bankruptcy court are "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."  In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) (citation and internal quotation marks omitted).  In addition, other considerations may include the timing of the request for withdrawal, the utilization of the bankruptcy judge's expertise, and the preservation of the appellate process set forth by the Bankruptcy Act.  Id. (citations omitted).  "Another factor sometimes considered by courts analyzing whether withdrawal is appropriate is whether the parties have requested a jury trial." NDEP Corp. v. Handl-It, Inc., 203 B.R. 905, 908 (D. Del. 1996) (citation and internal quotation marks omitted).  The moving party bears the burden to demonstrate cause warranting withdrawal.  Three Rivers Bottling, L.L.C. v. Schreiber Indus.

---

[2]    Contrary to permissive withdrawal, 28 U.S.C. § 157(d) requires mandatory withdrawal when "the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  Neither party suggests that this case implicates other federal law or that mandatory withdrawal is applicable.

Dev. Co., 2005 U.S. Dist. LEXIS 25381, at *5 (W. Pa. Oct. 27,

2005); I.R.S. v. CM Holdings, Inc., 221 B.R. 715, 721 (D. Del.

1998)

Further, when deciding whether to withdraw the reference, a

court must evaluate whether the action sought to be withdrawn is

a core or non-core proceeding.  See 28 U.S.C. § 157(b)(1),

(c)(1).  In the Third Circuit, a proceeding is deemed "core" "if

it invokes a substantive right provided by title 11 or . . . if

it is a proceeding, that by its nature, could arise only in the

context of a bankruptcy case."  Halper v. Halper, 164 F.3d 830,

836 (3d Cir. 1999).  Significantly, in core proceedings,

bankruptcy courts have full adjudicative authority, subject to

appellate review by the district courts.  Binder v. Price

Waterhouse & Co., L.L.P., 372 F.3d 154, 162 (3d Cir. 2004)

(citing 28 U.S.C. §§ 157(b)(1), 158(a), (c)).

The Bankruptcy Court also may hear non-core proceedings that

are otherwise related to the bankruptcy case.  See 28 U.S.C. §

157(c)(1).  A civil proceeding is related to bankruptcy when "the

outcome of that proceeding could conceivably have any effect on

the estate being administered in bankruptcy."  Velocita Corp. v.

Constr. Mgmt. & Inspection, Inc., 169 Fed. Appx. 712, 715 (3d

Cir. 2006) (citation, internal quotation marks, and italics

omitted).  However, as opposed to its expansive role in core

proceedings, in non-core proceedings, "the bankruptcy court

'shall submit proposed findings of fact and conclusions of law to the district court' subject to de novo review by that court." Binder, 372 F.3d at 162 (quoting 28 U.S.C. § 157(c)(1)).

To begin, for whatever may be said of this case's other matters, the confirmation of the plan of reorganization constitutes a "core" proceeding subject entirely to the Bankruptcy Court's jurisdiction and authority.[3]  See 28 U.S.C. §

---

[3]     Deduced from the parties' briefs, it appears that the Bankruptcy Court was never given an opportunity to determine whether the proceedings in this case constitute core or non-core proceedings.  Failure to allow the Bankruptcy Court to make that determination in the first instance has rendered motions to withdraw the reference premature and unripe for adjudication in a number of cases.  See, e.g., Katz v. Karagjozi, 2009 U.S. Dist. LEXIS 63215, at *5 (D.N.J. Jul. 22, 2009) ("The core or non-core determination is a 'threshold factor' in the withdrawal analysis, and should be made in the first instance by the Bankruptcy Court."); In re East West Trade Partners, Inc., 2007 U.S. Dist. LEXIS 29645, at *9 (D.N.J. Apr. 23, 2007) ("This court finds that 28 U.S.C. § 157(b)(3) requires the bankruptcy judge to determine whether a proceeding is core or non-core."); but see GGC, L.L.P. v. Indus. Risk Insurers, 2006 U.S. Dist. LEXIS 69163, at *3 (W. Pa. Sept. 26, 2006) (stating that motion to withdraw need not be dismissed as premature for failure to allow the Bankruptcy Court to determine whether proceeding is core or non-core because parties stipulated that proceeding was not core); Harley Hotels, Inc. v. Rain's Int'l, Ltd., 57 B.R. 773, 776 (M.D. Pa. 1985) (finding that a Bankruptcy Court need not decide whether a matter constitutes a core or non-core proceeding in the first instance). Although failure to obtain the Bankruptcy Court's preliminary determination may provide independent grounds on which to dismiss this motion, the Court addresses the motion on its merits given that neither party disputes that the confirmation of the plan is a core proceeding and because other factors, irrespective of whether the remaining issues are core or non-core, weigh in favor of this motion's dismissal.  Moreover, the instant disposition of this motion is also appropriate because of the ongoing proceedings in the Bankruptcy Court and the need for an expeditious resolution.

157(b)(2)(L) (stating that "[c]ore proceedings include . . . confirmations of plans"); <u>Medford Vill. East Assocs., L.L.C. v. Medford Crossings N. L.L.C.</u>, 2009 U.S. Dist. LEXIS 50464, at *16 (D.N.J. Jun. 15, 2009) ("Confirmation of a Plan of Reorganization is a 'core proceeding.'" (quoting 28 U.S.C. § 157(b)(2)(L))). Neither party disputes that the confirmation of the plan in this case is a core proceeding; rather, both parties acknowledge as much.  Wild Waves just recently submitted its plan and disclosure statement to the Bankruptcy Court, and according to representations made to the Court, Nickels must soon submit its own plan and disclosure statement.

In weighing the other factors, the Court finds that the Bankruptcy Court should retain jurisdiction of this entire case. Nickels and Wild Waves commenced their litigation in New Jersey Superior Court in 2001, approximately nine years ago.  After years in state court, Nickels filed its Chapter 11 petition in the Bankruptcy Court in 2003, about six years prior to the present motion.  Since that time, the Bankruptcy Court has intimately familiarized itself with the parties, their relationships, their financial statuses, their myriad disputes, and the case's pertinent witnesses and evidence.  The Bankruptcy Court, as submitted by Wild Waves, has adjudicated approximately seventy motions, has held dozens of hearings, has conducted a trial in this case, and has issued multiple opinions and orders.

In addition, it has at times revisited its past opinions on remand from the District Court.  In other words, the Bankruptcy Court is uniquely situated to address the outstanding issues at the center of this case, especially the plan of reorganization, which may be affected by rulings issued in connection with the other pending, related matters.

Enabling the Bankruptcy Court to continue to usher this case towards resolution, as it has faithfully attempted to do for six years, will guarantee, to the utmost extent possible, uniformity and expeditiousness, will reduce any confusion that this Court may interject into the case at this juncture, will preserve the parties' resources, and will promote the bankruptcy appellate process.  See, e.g., OHC Liquidation Trust v. Discovery Re, 2007 U.S. Dist. LEXIS 51835, at **6-7 (D. Del. Jul. 17, 2007) (rejecting motion to withdraw because, in part, proceeding was before bankruptcy court for a year prior to motion, and bankruptcy court "became familiar with the facts and issues surrounding this case," "issued an opinion on Defendants' Motion to Dismiss, and conducted discovery"); Jamuna Real Estate, L.L.C. v. Bagga, 2007 U.S. Dist. LEXIS 4559, at **9-10 (E.D. Pa. Jan. 22, 2007) (rejecting motion to withdraw non-core proceedings because of "the Bankruptcy Court's broad familiarity with the issues surrounding Defendants' bankruptcy . . . and the fact that the outcome of the adversary action is likely to impact the

12

administration of the bankrupt estates"); <u>Travelers Cas. & Sur.</u>
<u>Co. v. Skinner Engine Co.</u>, 325 B.R. 372, 378-80 (W.D. Pa. 2005)
(rejecting motion to withdraw on account of Bankruptcy Court's
familiarity with case and parties, its current and anticipated
adjudication of contested issues and discovery disputes, its
previous hearings, and the pendency of the confirmation plan);
<u>Three Rivers Bottling</u>, 2005 U.S. Dist. LEXIS 25381, at *9
(rejecting motion to withdraw reference for non-core proceeding
because, in part, the Bankruptcy Court "will be familiar with the
parties, defendant's proof of claim . . . , and the content and
effect of plaintiff's bankruptcy filings").

The Bankruptcy Court has a comprehensive understanding of
this case that has and should continue to benefit the respective
parties and the prompt disposition of their multifaceted
disputes.  By preserving the entire case before the Bankruptcy
Court, the Court is able to ensure that any determinations
reached in this case will remain consistent with previous and
future decisions and will be facilitated by the judge with the
most thorough knowledge of the facts and law applicable to this
case, all subject to District Court review.  Were this Court to
withdraw the reference to the Bankruptcy Court at this time, the
Court fears that unreasonable delay and disruption would infect
the case and possibly complicate the confirmation of the plan, a
process that is just commencing in the Bankruptcy Court.

Moreover, neither party has intimated that this case will require

a jury trial -- or, at least, a jury trial any time in the

foreseeable future -- which generally would support withdrawal of

the reference.

Given the duration and complexities of this case and the

Bankruptcy Court's intimate involvement from the litigation's

outset in federal court, the interests of efficiency and

uniformity counsel in favor of denying Nickels's motion.  Through

the Bankruptcy Court's familiarity and expertise, it is best

suited not only to foster and confirm a plan of reorganization,

but also to address the other disputes remaining in this case.

For example, Nickels represents that among the issues that have

been or may be appealed are the rent abatement, the determination

of damages relating to breach of the lease, and the alleged

breach of the parties' sale agreement.

The Bankruptcy Court already has addressed Nickels's

challenge to rent abatement on multiple occasions and that issue

has recently been appealed to this Court.  Moreover, the

Bankruptcy Court has decided the parties' liabilities with

regards to breach of the lease and, thus, is well positioned to

adjudicate any damages in connection to those liabilities.

Finally, as described in Nickels's own brief, the Bankruptcy

Court is "presently litigating" allegations of breach of the sale

agreement.  As evinced by its knowledge and administration of

this case from the case's inception and its prior adjudication of
issues pertaining to the parties' sale and lease agreements, the
Bankruptcy Court provides an appropriate forum to address any
alleged breach of the sale agreement and to evaluate the totality
of damages.  Ultimately, were the Bankruptcy Court only able to
propose factual findings and legal conclusions to this Court,
that service, in and of itself, would prove beneficial given this
case's scope and complexity and, thus, would warrant the
Bankruptcy Court's continued involvement here.

Further, this Court is sensitive to Nickels's concerns about
duplicating its expenses on appeal after having litigated before
the Bankruptcy Court.  However, the Court is convinced that,
ultimately, the best interests of the parties and this case are
advanced by the Bankruptcy Court's ongoing participation, at
least at this stage of the litigation, with the possible
confirmation of the plan imminently near.  Also in this regard,
it is worth noting that Nickels already has waited approximately
six years to seek withdrawal of the reference.  During the
protracted litigation before the Bankruptcy Court, the parties
have invested an enormous amount of resources and have appealed
and cross-appealed to the District Court, the Third Circuit, and
even the Supreme Court of the United States on numerous
occasions.  While that history does not preclude this Court from
granting Nickels's motion, the Court finds that, based on the few

15

issues remaining -- which includes the core proceeding with regards to the confirmation of the plan -- the timing of Nickels's motion also weighs against its success.  See, e.g., Scharffenberger v. United States, 2006 U.S. Dist. LEXIS 91548, at *6 (W.D. Pa. Dec. 19, 2006) (denying motion for withdrawal because bankruptcy court had worked on case for nearly a year prior to motion, and "[w]ere the matter withdrawn to this court, its resolution would be substantially delayed as this court became familiar with the facts, parties, and law"); Gredd v. Bear, Stearns Sec. Corp., 343 B.R. 63, 68 (S.D.N.Y. 2006) (rejecting motion to withdraw because movant waited about five years before filing motion, and noting that some courts "have held that a delay of several months in making a motion to withdraw a reference to the Bankruptcy Court may be untimely"); In re Baldwin-United Corp., 57 B.R. 751, 753 (S.D. Ohio 1985) (noting that "[i]n a Chapter 11 reorganization . . . [i]f a motion [to withdraw the reference] could have been filed earlier and it is filed at a time when it could delay and consequently jeopardize the reorganization, it would not be timely").

In support of its Motion to Withdraw the Reference, Nickels relies primarily on In re Congoleum Corporation, 414 B.R. 44 (D.N.J. 2009).  Nickels, however, overstates the import of that opinion in relation to the present case.  In Congoleum Corporation, the Court withdrew the reference, sua sponte, from

the Bankruptcy Court.  Id. at 61.  However, the Court's decision

followed the Bankruptcy Court's denial of the parties' fourteenth

proposed plan of reorganization and dismissal of the entire case.

Id. at 47.  Upon reversing the Bankruptcy Court's dismissal, the

Court stated that it would withdraw the reference and, "in the

interests of judicial economy and to avoid potential repetitive

appeals and piecemeal litigation," assume authority over the

case.  Id. at 61.

    Unlike in Congoleum Corporation, the Bankruptcy Court here

has not dismissed the bankruptcy case.  Nor has either party

suggested that it or the Bankruptcy Court has encountered any

substantial failure or frustration in attempting to craft an

acceptable, confirmable plan.  Therefore, the issues at the heart

of Congoleum Corporation do not exist here.

    For the reasons stated above, Nickels's Motion to Withdraw

the Reference is, at this time, denied.  However, if

circumstances were to change markedly, Nickels may file another

motion to withdraw the reference.  See Three Rivers Bottling,

2005 U.S. Dist. LEXIS 25381, at **10, 13 (dismissing motion to

withdraw but allowing for possibility of another motion at a

later time).  Were there an appropriate reason to file another

withdrawal motion in the future, the Court encourages Nickels to

request first that the Bankruptcy Court determine whether the

relevant proceedings to be withdrawn are "core" or "non-core."

## IV.   CONCLUSION

For the foregoing reasons, Nickels's Motion to Withdraw the

Reference to the Bankruptcy Court is denied.


Dated: January 28, 2010         /s/ NOEL L. HILLMAN
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.